## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |  |
|---|---|---|---|
| STEVE TORELLO AS TRUSTEE OF THE CENTRAL STATES JOINT BOARD HEALTH & WELFARE FUND AND MIDWEST PENSION FUND | ) ) ) ) ) | | |
| Plaintiff, | ) ) | Case No. | FILED: MAY 1, 2008 |
| vs. | ) ) | | 08cv2493 J. N. JUDGE ANDERSEN |
| VESUVIUS USA CORPORATION, | ) ) | | MAG. JUDGE MASON |
| Defendant. | ) | | |

### COMPLAINT

Plaintiff, Steve Torello, as Trustee of the Central States Joint Board Health & Welfare Fund ("Welfare Fund") and as Trustee of the Midwest Pension Fund ("Pension Fund" or jointly "Funds"), by his attorneys, John F. Ward and Jacqueline L. Bachman, complains against Vesuvius USA Corporation as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction and venue of this Court are based upon section 502(a), (e) and (f) of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §1132(a), (e) and (f), and section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, as more fully appears herein.

## PARTIES

2.     The Funds are multi-employer employee benefit plans within the meaning of sections 3(3) and (37) of ERISA, 29 U.S.C. § 1002(3) and (37), and maintain their principal place of operation in Chicago, Illinois.

3.     Plaintiff Steve Torello is a Trustee of the Funds and, as such, is a fiduciary within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).

4.     Manufacturing, Production and Service Workers Union, Local 24 ("Local 24") is an "employee organization" within the meaning of section 3(4) of ERISA, 29 U.S.C. § 1002(4) and a "labor organization" within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

5.     Defendant Vesuvius USA Corporation, Inc. is an Illinois Corporation within this judicial district.  Vesuvius USA Corporation, Inc. is engaged in an industry affecting commerce, as defined by section 301(a) of the LMRA, 29 U.S.C. § 185(a), and is an "employer" as defined by section 3(5) of ERISA, 29 U.S.C. § 1002(5).

## COUNT I

6.     Vesuvius USA Corporation, Inc. and Local 24 have been parties to a series of collective bargaining agreements effective September 26, 2001 through April 29, 2012.  Copies of the relevant portions of the 2001-2004 and 2004-2007 collective bargaining agreements are attached hereto as Exhibits A and B, respectively, and incorporated herein.

2

7.      Pursuant to Article XIII and XIV of the collective bargaining agreements, Vesuvius USA Corporation, Inc. is bound by the terms of the Funds' Declarations of Trust as well as by the rules and regulations adopted by the Funds' Trustees.

8.      Pursuant to Articles XIII and XIV of the collective bargaining agreements, Vesuvius USA Corporation, Inc. is required to make timely contributions to the Funds on behalf of each employee covered by the agreement.

9.      The Funds maintain a ten-percent (10%) liquidated damages provision for any late contributions received after the 10th day of the month in which contributions are due.

10.     Notwithstanding its obligation under the collective bargaining agreements, Vesuvius USA Corporation, Inc. failed to make timely contributions to the Funds for the months of September 2001 through October 2006 resulting in liquidated damages of $36,694.14, thereby depriving the Funds of contributions and income, jeopardizing the benefits of participants and beneficiaries, violating section 515 of ERISA, 29 U.S.C. § 1145, the collective bargaining agreements and section 301 of the LMRA, 29 U.S.C. § 185.

11.     Pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132 (g)(2), Vesuvius USA Corporation, Inc. is indebted to the Funds, in addition to the delinquent contributions and liquidated damages found due and owing, for interest, attorney's fees, costs and other legal or equitable relief as this Court deems appropriate.

3

WHEREFORE, Plaintiff requests that this Court issue an order against

Defendant Vesuvius USA Corporation, Inc. granting the following relief:

A.   A judgment on behalf of the Plaintiff for liquidated damages in the amount of $36,694.14 due and owing from Defendant Vesuvius USA Corporation, Inc. to the Funds for the period of September 2001 through October 2006 and an order to make future contributions in accordance with the collective bargaining agreements;

B.   A judgment on behalf of Plaintiff for interest, reasonable attorney's fees and costs of this action;

C.   An order declaring that this Court will retain jurisdiction of this cause pending compliance with its orders; and

D.   Any other legal or equitable relief as this Court may deem appropriate.

By:   /s/ John F. Ward
      John F. Ward, One of the
      Attorneys for Plaintiff

John F. Ward
John F. Ward, Attorney at Law
227 West Monroe Street
Suite 2000
Chicago, Illinois 60606
(312) 762-5950

Date:  May 1, 2008

# Exhibit A

```
08CV2493 J. N.
JUDGE ANDERSEN
MAG. JUDGE MASON
```

## AGREEMENT BETWEEN
## VESUVIUS USA
## CHICAGO HEIGHTS, ILLINOIS

## AND

## MANUFACTURING, PRODUCTION & SERVICE WORKERS
## UNION LOCAL #24, AFL-CIO

*Effective September 26, 2001*

*Expires September 25, 2004*

*0754CONT.DOC*

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | RECOGNITION | 1 |
| II | UNION SECURITY AND CHECKOFF | 1 |
| III | WAGES | 3 |
| IV | JOB CLASSIFICATIONS | 4 |
| V | HOURS OF WORK AND OVERTIME | 6 |
| VI | GRIEVANCE PROCEDURE | 7 |
| VII | MANAGEMENT | 9 |
| VIII | EQUAL EMPLOYMENT OPPORTUNITY | 10 |
| IX | SENIORITY | 11 |
| X | HOLIDAYS | 13 |
| XI | VACATIONS | 15 |
| XII | SAFETY AND HEALTH | 16 |
| XIII | INSURANCE & HOSPITALIZATION | 17 |
| XIV | PENSION | 22 |
| XV | LEAVE OF ABSENCE | 24 |
| XVI | BEREAVEMENT | 25 |
| XVII | JURY DUTY | 25 |
| XVIII | PAY FOR INJURIES | 26 |
| XIX | GENERAL | 26 |
| XX | NO STRIKE | 28 |
| XXI | GENDER | 29 |
| XXII | MILITARY LEAVE | 29 |
| XXIII | MATERNITY LEAVE | 29 |
| XXIV | UNION CONVENTIONS | 30 |
| XXV | UNION PAYROLL INSPECTION | 30 |
| XXVI | FAMILY MEDICAL LEAVE ACT AND THE AMERICAN WITH DISABILITIES ACT | 31 |

XXVII        WAIVER AND ENTIRE AGREEMENT          31

XXVIII       EFFECTIVE DATE AND TERMINATION        32

## AGREEMENT

This Agreement, made and entered into as of the **26th day of September, 2001,** by and between **VESUVIUS USA,** (hereinafter referred to as the "Company"), in its behalf and in behalf of any successor or assigns of said Company, and the **MANUFACTURING, PRODUCTION AND SERVICE WORKERS UNION LOCAL #24, A.F.L.-C.I.O.** (hereinafter referred to as the "Union").

## ARTICLE I
## RECOGNITION

**Section 1.  Recognition and Bargaining Unit.**  The Company recognizes the Union as the sole and exclusive bargaining agency with respect to rates of pay, hours of work, and other conditions of employment for all its production and maintenance employees at its plant at 333 State Street, Chicago Heights, Illinois, excluding all office clerical and plant clerical employees, technical employees, part-time employees, guards and supervisors, within the meaning of the National Labor Relations Act, as amended.  Nothing in this Agreement shall be deemed as a guarantee or obligation to continue operations or any portion thereof, or as a guarantee of employment to any employee.

## ARTICLE II
## UNION SECURITY AND CHECKOFF

**Section 1.  Union Security.**  Thirty (30) working days after their date of hire or (30) thirty working days after execution of this Agreement, whichever is later, all employees must as a condition of continued employment become members of the

In furtherance to the Company's policy on Drug and Alcohol in the Workplace, where there is reasonable suspicion and or cause, including in the case of an OSHA recordable accident, to believe that an employee is unfit to work, or that the employee may not be able to safely and satisfactorily continue to perform his or her assigned tasks due to drug or alcohol use, the employee may be required to submit to a urinalysis and or the appropriate drug or alcohol tests (s) as determined by the Company. Failure to satisfactorily pass such test(s) may result in disciplinary action u to and including discharge. Refusal to submit to such test (s) will result in immediate discharge.

An employee who takes such test(s) and who does not satisfactorily pass, may be referred to an appropriate rehabilitation program. Where an employee is referred to such a program, and does not enter the program, or enters the program but does not complete the program, he or she will be discharged. Notwithstanding having attended such a program and completing same, and employee who tested positive for drugs or alcohol will be subject to unannounced testing at any time during the six (6) months following the completion of their rehabilitation program. An employ subject to such retesting who does not satisfactorily pass such test(s) will be immediately discharged.

## ARTICLE XIII
## INSURANCE & HOSPITALIZATION

**Section 1.**  The Company will continue during the life of this Agreement to provide a Contribution to the Health and Welfare Trust Fund. Contributions to the plan will include employee and family coverage on the following basis:

The Employer shall make the monthly contributions to the Central States Joint Board Health and Welfare Trust Fund (Fund) for each Employee n the active employ of the Employer with thirty (30) calendar days of service (except as modified in Section 9(b) and Section (c) of this Article).

**Section 2.**  Effective January 1, 2001, the Employer shall pay on behalf of each eligible Employee as described in Section 1 into the Central States Joint Board, Health & Welfare Trust fund an amount not to exceed $285.00 per month.

**Section 3.**  Effective January 1, 2002, January 1, 2003, January 1, 2004, the Employer shall pay on behalf of each eligible Employee as described in Section 1 into the Central States Joint Board Health and Welfare Trust Fund an amount that shall not exceed the previous year's rate by more than 22%.   The actual contribution level shall be determined after completion of an actuarial study of the Fund.

If the contribution level in any year is greater than the amount to be paid by the Employer as set forth above than the difference in cost shall be borne by each covered Employee.

The Employer shall be notified in writing of the monthly contribution actuarially determined not later than 60 days preceding January 1st of each year.

**Section 4.**  The Fund shall use these payments for purposes permitted under the Trust Agreement and to provide health, welfare, death and such other benefits as permitted by said Trust Agreement, as amended, from time to time, and by Section 302(c ) of the Labor Management and Relations Act of 1947 and the Employee Retirement Income Security Act of 1974.

**Section 5.**   The Fund is an irrevocable Trust heretofore created by an Agreement and Declaration of Trust (Trust) pursuant to Collective Bargaining Agreements between certain Employers and the Union.

**Section 6.**   **(a)**   The Union represents that the Trust is lawful and is qualified under all applicable provisions of the International Revenue Code, so that all contributions by the Employer will be deductible for income tax purposes; and the obligation of the Employer to contribute to the Trust shall cease at any time the Fund loses its qualification under the Internal Revenue Code.

**(b)**   The Employer's sole liability shall be for the payment of the monthly contributions set forth in Sections 1, 2, 3, & 9, of this Article and in now way guarantees payment of the benefits established by Trust fund nor the solvency of the Fund.

**(c)**   The Union agrees to hold the Employer harmless against any liability arising from the Employer's compliance with this Article.

**Section 7.**   The Union represents that this Fund is administered jointly by Trustees equal in number appointed by the Union and appointed by the Employers who contribute to the Fund.

**Section 8.**   The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund, as amended from time to time.   The Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility the right to participate in benefits of the Fund, time, method of payment, payment during periods of Employee illness

or disability, methods of enforcement of payment and related matters, and any construction adopted and any determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

**Section 9.**  The Employer's payment to the Fund shall be as follows:

**(a)**    The amount per Employee per month shall be paid for each Employee covered by this Agreement by the 10th of the month and by the 10th of each month thereafter and who has received at least eight (8) hours of compensation for that month, in which an employee terminates active employment.

**(b)**    If a covered Employee is absent because non-occupational illness or injury, the Employer shall pay the required payment for a period of six (6) additional month(s) following the month in which the illness or injury occurred.

**(c)**    If a covered Employee is absent because of occupational illness or injury, the Employee shall pay the required payment for a period of 12 months(s) following the month in which the occupational illness or injury occurred.

**(d)**    If a covered Employee is absent due to a leave of absence under the Family and Medical Leave Act, the Employer shall pay the required payment.

**Section 10.**    Whenever the Trustees of the Fund determine that the Employer is delinquent in making payments to the Health & Welfare Fund, as required under this Article or the rules and regulations of the Fund then the Employer shall be responsible for the specific and direct losses of any Health & Welfare benefits resulting thereby and agrees to make full reimbursement to the

Fund for all costs incurred in the collection of said delinquencies or the enforcement of this Article in addition to liquidated damages and/or penalties due the Fund.

**Section 11.**  No payment of credits, due to contributions made by the Employer for an ineligible Employee, shall be allowed if claim for such credit is not made on or prior to the last day of the month for which the report containing the error was due and payable.

**Section 12.**  In addition  to the benefits contained in Section 1 of this Article, the Company will provide Life Insurance coverage and, improve the sickness and accident coverage without additional cost to the employees as follows:

A)      **Life Insurance** - $21,500 effective September 26, 2001.

B)      **Sickness and Accident:**  Effective September 26, 2001, $225.00 per week; to commence the first (1st) day of an accident or the eighth (8th) day of an illness for up to twenty-six (26) weeks.

**Section 10.**  The Company shall provide the Union with the agreed upon dental plan.  The Company agrees to pay the full cost of an employees premium.  If the employee elects dependent(s) coverage in conjunction with said plan, then the employee shall pay the full cost of said dependent(s) premium.

The Union agrees to indemnify and save the Company harmless against any and all claims, demands, suits or other forms of liability that shall arise out of or by reason of action taken or not taken by the Company in complying with the provisions of this Section.

**ARTICLE XIV**

**PENSION**

**Section 1.**  The Employer shall make the following monthly contributions to the Midwest Pension Plan (Fund) for each Employee in the active employ of the Employer with ninety (90) calendar days of service

| | | |
|---|---|---|
| Effective January 1, 2000 | - | $43.00 |
| Effective January 1, 2002 | - | $45.00 |
| Effective January 1, 2003 | - | $47.00 |
| Effective January 1, 2004 | - | $49.00 |

**Section 2.**  The Fund shall use these payments for purposes permitted under the Trust Agreement and to provide Pension, death, and such other benefits as permitted by said Trust Agreement, as amended from time to time, and by Section 302(c) of the Labor-Management and Relations Act of 1947 and the Employee Retirement Income Security Act of 1974.

**Section 3.**  (a)  The Fund is an irrevocable Trust heretofore created by an Agreement and Declaration of Trust (Trust Agreement), pursuant to Collective Bargaining Agreements between certain Employers and the Union.

**Section 4.**  (a)  The Union represents that said Trust Fund is lawful and is qualified under applicable provisions of the Internal Revenue Code, so that all contributions by the Employer will be deductible for income tax purposes; and the obligation of the Employer to contribute to the Trust shall cease at any time the fund loses its qualification under the Internal Revenue Code.

(b)   The Employer's sole liability shall be for the payment of the monthly contributions set forth in Section 1 and 7 of this Article and in no way guarantees payment of the benefits established by the Trust Fund nor the solvency of the Fund.

(c)   The Union agrees to hold the Employer harmless against any liability arising from the Employer's compliance with this Article.

**Section 5.**   The Union represents that this Fund is administered jointly by Trustees equal in number appointed by the Union and appointed by the Employers who contribute to the Fund.

**Section 6.**   The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund, as amended from time to time the Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility, the right to participate in benefits of the Fund, time, method of payment, payment during periods of Employee illness or disability, methods of enforcement of payment and related matters, and any construction adopted and any determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

**Section 7.**   The Employer's payments to the Fund shall be as follows:

The amount per Employee per month shall be paid for each Employee covered by this Agreement by the 10th of the month next following the end of the Employee's 90th calendar day of service and by the 10th each month thereafter,

for all hours for each Employee receiving forty (40) hours of compensation during the calendar month for which contribution are being made.

**Section 8.**  Whenever the Trustees of the Fund determine that the Employer is delinquent in making payments to the Midwest Pension Plan, as required under this Article or the rules and regulations of the fund, then the Employer shall be responsible for the specific and direct losses of any Pension benefits resulting thereby and agrees to make full reimbursement to the fund for all costs incurred in the collection of said delinquencies or the enforcement of this Article in addition to liquidated damages and/or penalties due the Fund.

**Section 9.**  No payment of credits, due to contributions made by the Employer for an ineligible Employee shall be allowed if claim for such credit is not made on or prior to the last day of the month for which the report containing the error was due and payable.

## ARTICLE XV
## LEAVE OF ABSENCE

**Section 1.**  Leave of absences, without pay, may be granted by the Company to any employee for reasonable cause.

**Section 2.**  Application for leave of absence must be made in writing to the Plant Manager at least thirty (30) days prior to the effective date of such leave of absence, and be approved by the Plant Manager.  Such leave of absence will be for period of not more than thirty (30) days.

## ARTICLE XXVIII

## EFFECTIVE DATE AND TERMINATION

This Agreement shall become effective as of September 26, 2001, and shall continue in effect until **midnight of September 25, 2004**, on which expiration date this Agreement and the terms hereof shall be automatically renewed for a period of one (1) additional year, unless sixty (60) days prior to the expiration date of this Agreement notice in writing, by registered or certified mail, is given by either party to the other of its desire to modify or cancel this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement this _____25_____ day of _____October_____, 20_01_.

**MANUFACTURING, PRODUCTION & SERVICE WORKERS UNION LOCAL #24, AFL-CIO**

**VESUVIUS USA**

-32-

# EXHIBIT B

08CV2493 J. N.
JUDGE ANDERSEN
MAG. JUDGE MASON

## AGREEMENT BETWEEN
## VESUVIUS USA
## CHICAGO HEIGHTS, ILLINOIS

## AND

## MANUFACTURING, PRODUCTION & SERVICE WORKERS
## UNION LOCAL #24, AFL-CIO

*Effective September 26, 2004*
*Expires September 25, 2007*

*0754CONT.DOC*

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | RECOGNITION | 1 |
| II | UNION SECURITY AND CHECKOFF | 1 |
| III | WAGES | 3 |
| IV | JOB CLASSIFICATIONS | 3 |
| V | HOURS OF WORK AND OVERTIME | 6 |
| VI | GRIEVANCE PROCEDURE | 7 |
| VII | MANAGEMENT | 10 |
| VIII | EQUAL EMPLOYMENT OPPORTUNITY | 11 |
| IX | SENIORITY | 11 |
| X | HOLIDAYS | 14 |
| XI | VACATIONS | 16 |
| XII | SAFETY AND HEALTH | 17 |
| XIII | INSURANCE & HOSPITALIZATION | 18 |
| XIV | PENSION | 23 |
| XV | LEAVE OF ABSENCE | 25 |
| XVI | BEREAVEMENT | 26 |
| XVII | JURY DUTY | 27 |
| XVIII | PAY FOR INJURIES | 27 |
| XIX | GENERAL | 28 |
| XX | NO STRIKE | 29 |
| XXI | GENDER | 31 |
| XXII | MILITARY LEAVE | 31 |
| XXIII | MATERNITY LEAVE | 31 |
| XXIV | UNION CONVENTIONS | 32 |
| XXV | UNION PAYROLL INSPECTION | 32 |
| XXVI | FAMILY MEDICAL LEAVE ACT AND THE | |

|        | AMERICAN WITH DISABILITIES ACT | 32 |
| XXVII | WAIVER AND ENTIRE AGREEMENT | 33 |
| XXVIII | EFFECTIVE DATE AND TERMINATION | 33 |
|        | LETTER OF UNDERSTANDING REGARDING | |
|        | ADDITION OF VESUVIUS USA CHICAGO | |
|        | HEIGHTS SHIPPING COORDINATOR | 35 |
|        | LEADPERSON | 37 |
|        | LETTER OF UNDERSTANDING RE: REVISED | |
|        | CHICAGO HEIGHTS MAINTENANCE SCALE | 39 |

# AGREEMENT

This Agreement, made and entered into as of the **26**[th] **day of September, 2004,** by and between **VESUVIUS USA,** (hereinafter referred to as the "Company"), in its behalf and in behalf of any successor or assigns of said Company, and the **MANUFACTURING, PRODUCTION AND SERVICE WORKERS UNION LOCAL #24, A.F.L.-C.I.O.** (hereinafter referred to as the "Union").

# ARTICLE I
# RECOGNITION

**Section 1.    Recognition and Bargaining Unit.**    The Company recognizes the Union as the sole and exclusive bargaining agency with respect to rates of pay, hours of work, and other conditions of employment for all its production and maintenance employees at its plant at 333 State Street, Chicago Heights, Illinois, excluding all office clerical and plant clerical employees, technical employees, part-time employees, guards and supervisors, within the meaning of the National Labor Relations Act, as amended.  Nothing in this Agreement shall be deemed as a guarantee or obligation to continue operations or any portion thereof, or as a guarantee of employment to any employee.

# ARTICLE II
# UNION SECURITY AND CHECKOFF

**Section 1.  Union Security.**  Thirty (30) working days after their date of hire or (30) thirty working days after execution of this Agreement, whichever

unfit to work, or that the employee may not be able to safely and satisfactorily continue to perform his or her assigned tasks due to drug or alcohol use, the employee may be required to submit to a urinalysis and or the appropriate drug or alcohol tests (s) as determined by the Company. Failure to satisfactorily pass such test(s) may result in disciplinary action up to and including discharge. Refusal to submit to such test (s) will result in immediate discharge.

An employee who takes such test(s) and who does not satisfactorily pass, may be referred to an appropriate rehabilitation program. Where an employee is referred to such a program, and does not enter the program, or enters the program but does not complete the program, he or she will be discharged. Notwithstanding having attended such a program and completing same, an employee who tested positive for drugs or alcohol will be subject to unannounced testing at any time during the twelve (12) months following the completion of their rehabilitation program. An employ subject to such retesting who does not satisfactorily pass such test(s) will be immediately discharged.

## ARTICLE XIII
## INSURANCE & HOSPITALIZATION

**Section 1.** The Company will continue during the life of this Agreement to provide a Contribution to the Health and Welfare Trust Fund. Contributions to the plan will include employee and family coverage on the following basis:

The Employer shall make the monthly contributions to the Central States Joint Board Health and Welfare Trust Fund (Fund) for each Employee n the active employ of the Employer with thirty (30) calendar days of service (except as modified in Section 9(b) and Section (c) of this Article).

**Section 2.** Effective January 1, 2004, the Employer shall pay on behalf of each eligible Employee as described in Section 1 into the Central States Joint Board, Health & Welfare Trust fund an amount not to exceed $395.00 per month.

**Section 3.** Effective January 1, 2005, January 1, 2006, January 1, 2007, the Employer shall pay on behalf of each eligible Employee as described in Section 1 into the Central States Joint Board Health and Welfare Trust Fund an amount that shall not exceed the previous year's rate by more than 22%. The actual contribution level shall be determined after completion of an actuarial study of the Fund.

If the contribution level in any year is greater than the amount to be paid by the Employer as set forth above than the difference in cost shall be borne by each covered Employee.

The Employer shall be notified in writing of the monthly contribution actuarially determined not later than 60 days preceding January 1st of each year.

**Section 4.** The Fund shall use these payments for purposes permitted under the Trust Agreement and to provide health, welfare, death and such other benefits as permitted by said Trust Agreement, as amended, from time

to time, and by Section 302(c) of the Labor Management and Relations Act of 1947 and the Employee Retirement Income Security Act of 1974.

**Section 5.**  The Fund is an irrevocable Trust heretofore created by an Agreement and Declaration of Trust (Trust) pursuant to Collective Bargaining Agreements between certain Employers and the Union.

**Section 6.**     **(a)**     The Union represents that the Trust is lawful and is qualified under all applicable provisions of the International Revenue Code, so that all contributions by the Employer will be deductible for income tax purposes; and the obligation of the Employer to contribute to the Trust shall cease at any time the Fund loses its qualification under the Internal Revenue Code.

**(b)**     The Employer's sole liability shall be for the payment of the monthly contributions set forth in Sections 1, 2, 3, & 9, of this Article and in now way guarantees payment of the benefits established by Trust fund nor the solvency of the Fund.

**(c)**     The Union agrees to hold the Employer harmless against any liability arising from the Employer's compliance with this Article.

**Section 7.**  The Union represents that this Fund is administered jointly by Trustees equal in number appointed by the Union and appointed by the Employers who contribute to the Fund.

**Section 8.**  The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund, as amended from time to time.  The

Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility the right to participate in benefits of the Fund, time, method of payment, payment during periods of Employee illness or disability, methods of enforcement of payment and related matters, and any construction adopted and any determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

**Section 9.**  The Employer's payment to the Fund shall be as follows:

**(a)**      The amount per Employee per month shall be paid for each Employee covered by this Agreement by the 10th of the month and by the 10th of each month thereafter and who has received at least eight (8) hours of compensation for that month, in which an employee terminates active employment.

**(b)**      If a covered Employee is absent because non-occupational illness or injury, the Employer shall pay the required payment for a period of six (6) additional month(s) following the month in which the illness or injury occurred.

**(c)**      If a covered Employee is absent because of occupational illness or injury, the Employee shall pay the required payment for a period of nine (9) months(s) following the month in which the occupational illness or injury occurred.

**(d)**    If a covered Employee is absent due to a leave of absence under the Family and Medical Leave Act, the Employer shall pay the required payment.

**Section 10.**   Whenever the Trustees of the Fund determine that the Employer is delinquent in making payments to the Health & Welfare Fund, as required under this Article or the rules and regulations of the Fund then the Employer shall be responsible for the specific and direct losses of any Health & Welfare benefits resulting thereby and agrees to make full reimbursement to the Fund for all costs incurred in the collection of said delinquencies or the enforcement of this Article in addition to liquidated damages and/or penalties due the Fund.

**Section 11.**   No payment of credits, due to contributions made by the Employer for an ineligible Employee, shall be allowed if claim for such credit is not made on or prior to the last day of the month for which the report containing the error was due and payable.

**Section 12.**   In addition to the benefits contained in Section 1 of this Article, the Company will provide Life Insurance coverage and, improve the sickness and accident coverage without additional cost to the employees as follows:

**A)**    **Life Insurance** - $21,500 effective September 26, 2004.

**B)**    **Sickness and Accident:**   Effective September 26, 2004, $240.00 per week; to commence the first (1st) day of an accident or the eighth (8th) day of an illness for up to twenty-six (26)

weeks.  Effective September 26, 2005 - $255.00 per week and effective September 26, 2007 $270.00 per week.

# ARTICLE XIV
# PENSION

**Section 1.**    The Employer shall make the following monthly contributions to the Midwest Pension Plan (Fund) for each Employee in the active employ of the Employer with ninety (90) calendar days of service

Effective January 1, 2004          $49.00

**Section 2.**  The Fund shall use these payments for purposes permitted under the Trust Agreement and to provide Pension, death, and such other benefits as permitted by said Trust Agreement, as amended from time to time, and by Section 302(c) of the Labor-Management and Relations Act of 1947 and the Employee Retirement Income Security Act of 1974.

**Section 3.**  The Fund is an irrevocable Trust heretofore created by an Agreement and Declaration of Trust (Trust Agreement), pursuant to Collective Bargaining Agreements between certain Employers and the Union.

**Section 4.**  (a)  The Union represents that said Trust Fund is lawful and is qualified under applicable provisions of the Internal Revenue Code, so that all contributions by the Employer will be deductible for income tax purposes; and the obligation of the Employer to contribute to the Trust shall cease at any time the fund loses its qualification under the Internal Revenue Code.

(b)  The Employer's sole liability shall be for the payment of the monthly contributions set forth in Section 1 and 7 of this Article and in no way guarantees payment of the benefits established by the Trust Fund nor the solvency of the Fund.

(c)  The Union agrees to hold the Employer harmless against any liability arising from the Employer's compliance with this Article.

**Section 5.**  The Union represents that this Fund is administered jointly by Trustees equal in number appointed by the Union and appointed by the Employers who contribute to the Fund.

**Section 6.**  The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund, as amended from time to time the Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility, the right to participate in benefits of the Fund, time, method of payment, payment during periods of Employee illness or disability, methods of enforcement of payment and related matters, and any construction adopted and any determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

**Section 7.**  The Employer's payments to the Fund shall be as follows:

The amount per Employee per month shall be paid for each Employee covered by this Agreement by the 10th of the month next following the end of the Employee's 90th calendar day of service and by the 10th each month

thereafter, for all hours for each Employee receiving forty (40) hours of compensation during the calendar month for which contribution are being made.

**Section 8.**   Whenever the Trustees of the Fund determine that the Employer is delinquent in making payments to the Midwest Pension Plan, as required under this Article or the rules and regulations of the fund, then the Employer shall be responsible for the specific and direct losses of any Pension benefits resulting thereby and agrees to make full reimbursement to the fund for all costs incurred in the collection of said delinquencies or the enforcement of this Article in addition to liquidated damages and/or penalties due the Fund.

**Section 9.**   No payment of credits, due to contributions made by the Employer for an ineligible Employee shall be allowed if claim for such credit is not made on or prior to the last day of the month for which the report containing the error was due and payable.

# ARTICLE XV
# LEAVE OF ABSENCE

**Section 1.**   Leave of absences, without pay, may be granted by the Company to any employee for reasonable cause.

**Section 2.**   Application for leave of absence must be made in writing to the Plant Manager at least thirty (30) days prior to the effective date of such leave of absence, and be approved by the Plant Manager.  Such leave of absence will be for period of not more than thirty (30) days.

# ARTICLE XXVII
# WAIVER AND ENTIRE AGREEMENT

**Section 1.**   The parties acknowledge that during the negotiations resulting in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any and all subjects or matters not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after exercise of that right and opportunity are set forth in this Agreement.   Therefore, the Company and the Union each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to or covered in this Agreement or with respect to any subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement.   All rights and duties of both parties are specifically expressed in this Agreement and such expression is all-inclusive.   This Agreement constitutes the entire agreement between the parties and concludes collective bargaining for its term.

# ARTICLE XXVIII
# EFFECTIVE DATE AND TERMINATION

This Agreement shall become effective as of September 26, 2004, and shall continue in effect until **midnight of September 25, 2007**, on which expiration date this Agreement and the terms hereof shall be automatically renewed for a period of one (1) additional year, unless sixty (60) days prior to the expiration date of this Agreement notice in writing, by registered or

certified mail, is given by either party to the other of its desire to modify or cancel this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement this _____ 29th _____ day of _____ November _____, 20 04 .

**MANUFACTURING, PRODUCTION & SERVICE WORKERS UNION LOCAL #24, AFL-CIO**

VESUVIUS USA

_Keith Branner_

_Dennis L. Martin_

_Jeff Wing_

_Harvard Andrews_

~~Date Signed~~ _Philip Johnson 30_

-34-